**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                        Case No. 05-80710

STUART W. BILYEU

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS; MOTION TO STRIKE;
MOTION FOR DISCOVERY; AND MOTION FOR RETURN OF PATIENT CHARTS**

Pending before the court are four motions filed by Defendant Stuart W. Bilyeu: a "Motion to Dismiss the Indictment under the Sixth Amendment to the United States Constitution;" a "Motion to Strike Surplusage from Indictment;" a "Motion for Discovery and Disclosure of Exculpatory Evidence;" and a "Motion for Return of Patient Charts." The government has filed responses to the four motions. Having reviewed the motions and briefs, the court will deny all four of Defendant's motions.

**I. Motion to Dismiss the Indictment**

First, Defendant asks the court to dismiss the indictment filed against him because, according to Defendant, he "has not been provided with notice adequate under the Sixth Amendment of the charges brought against him." (Mot. to Dismiss Br. at 7.) Essentially, Defendant complains that certain language found in the "General Allegations" and elsewhere in the Indictment implicates broader charges than those specifically asserted in the ten counts of the Indictment. Defendant argues that he is therefore unsure of the exact nature of the charges, and the Indictment violates the constitutional guarantee theat each accused "shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. The court disagrees.

As the Sixth Circuit held in the case on which Defendant principally relies, *Valentine v. Konteh,* 395 F.3d 626 (6th Cir. 2005), v"[a]n indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." *Valentine v. Konteh,* 395 F.3d 626, 631 (6th Cir. 2005). *Id.* at 631.  The indictment in this case easily meets all three criteria.  The specific counts set forth the particular dates and type of drug which the government alleges Defendant prescribed in bad faith.  As the government argues, the "General Allegations" merely provide the background allegations by which the government intends to establish Defendant's bad faith.  The court finds no constitutional violation where, rather than surprise Defendant with the specifics of its bad faith evidence, the government has attempted to provide more allegations in the Indictment than may otherwise be necessary.  Defendant's motion is therefore denied.

## II.  Motion to Strike Surplusage from Indictment

Similarly, the court will deny Defendant's "Motion to Strike Surplusage from Indictment."  Defendant argues that allegations contained in paragraph four and five of the Indictment are unduly prejudicial and inflammatory and should be stricken from the indictment.  Defendant relies on Federal Rule of Criminal Procedure 7(d) and *United States v. Kempner*, 503 F.2d 327 (6th Cir. 1974) for the proposition that the court may strike surplusage from an indictment which "contains nonessential allegations that could prejudicially impress the jurors."  *Kempner*, 503 F.3d at 329-30.

The court first notes that the language challenged by Defendant is not prejudicial, but is rather a facially neutral recitation of certain alleged facts which the government hopes, if proven, will bolster its case.  Moreover, even if the language were prejudicial, the Sixth Circuit has held that "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no

matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Thomas,* 875 F.2d 559, 562 n. 2 (6th Cir. 1989) (citing *United States v. Climatemp, Inc.,* 482 F.Supp. 376, 391 (N.D.Ill.1979)). Here, the language of which Defendant complains relates to the overall volume of Defendant's medication purchases and prescriptions, which is certainly relevant to the charges that Defendant unlawfully prescribed controlled substances. *See, e.g., United States v. Ellzey,* 527 F.2d 1306, 1307 (6th Cir. 1976) (allowing introduction of 29,000 prescriptions written by the defendant as relevant to the issues of intent and wilfulness). Accordingly, Defendant's motion will be denied.

### III.  Motion for Return of Patient Charts

Next, Defendant requests an order compelling the government to return patient charts which were seized by law enforcement authorities on June 3, 2005. Significantly, Defendant does not challenge the lawfulness of the search or seizure, but instead argues that the government has had sufficient time to copy these records and they should now be returned to Defendant. Defendant cites no authority which would require the government to return the charts. Instead, as the government points out, the Federal Rules of Criminal Procedure do not require that the government return the original charts. The relevant rule provides only that the government must permit a defendant to copy or photograph such record "if the item is within the government's possession, custody, or control and . . . the item was obtained or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E)(iii). Here, there is no allegation that the government has refused to allow Defendant to inspect or copy the records, and the court finds that Defendant is not entitled anything further from the government.[1]

---

[1] To the extent Defendant requests these records be returned because they may contain exculpatory material, the court rejects this argument. The government is not withholding any exculpatory evidence with respect to these patient charts inasmuch as the government has offered to allow Defendant to inspect and copy the charts.

### IV.  Motion for Discovery and Disclosure of Exculpatory Evidence

Finally, Defendant moves the court pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) for an order compelling the government to "produce and disclose exculpatory material, statements and information." (Def.'s Mot. for Discovery Br. at 1.)  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87; *see also United States v. Bagley,* 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972).   Defendant relies on *Brady* to demand that all potentially exculpatory evidence, including any evidence which could be used to impeach government witnesses, be disclosed immediately.  Defendant further defines *Brady* material as any evidence which could arguably used to impeach the government's witnesses, including any information relating to consideration given to witnesses in exchange for their testimony, threats or coercion which may have been imposed on government witnesses, any prior felony convictions or juvenile adjudications of the witnesses, any evidence of prior "bad acts" of the witnesses, and any previous testimony that the witnesses may have given relating to the facts of this case.  Defendant also asks for discovery in the form of a list of the government's witnesses and copies of any agent reports.

In response, the government correctly cites the rule that "[t]here is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977).  Indeed, the Supreme Court has "made it clear that while the *Brady* rule imposes a general obligation upon the government to disclose evidence that is favorable to the accused and material to guilt or punishment, *the government typically is the sole judge of what evidence in its possession is subject to disclosure.*"  *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (emphasis added).  Defendant

here is attempting to define what types of evidence constitute *Brady* material, but it is the government who is required to make such determinations.

Moreover, it is true that the Supreme Court's decisions in *Giglio*, *Bagley* and *Brady* affirm the tenet that "it is fundamentally unfair for the government to achieve a conviction through the concealment of evidence which undermines the strength of the government's case against the defendant." *Presser*, 844 F.2d at 1283. Nonetheless, none of these cases give "the defense a general right to pre-trial discovery of evidence impeaching defense witnesses, where the prosecution denies that any such material is exculpatory and material under *Brady*." *Id.*

Further, to the extent Defendant seeks any prior statements, whether from grand jury testimony or elsewhere,[2] the Jencks Act expressly precludes such discovery at this stage of the proceedings. *See* 18 U.S.C. § 3500 ("In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."). Defendant cannot utilize *Brady* to attain what is prohibited by the Jencks Act. *Presser*, 844 F.2d at 1283. The government will be required, of course, to turn over any statements after their witnesses testify but, until such time, the government is not mandated by the Constitution or the Jencks Act to produce the statements. As the Sixth Circuit has held, "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial, we fail to see how the Constitution is violated." *Id.*

---

[2] The court also notes that Defendant has not identified a "particularized need" for the disclosure of any grand jury testimony under Federal Rule of Criminal Procedure 6(e). *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 222 n.12 (1979).

Consistent with this authority, the court will not issue an order compelling pre-trial discovery where, as here, the government has stated that it is aware of its obligations under *Brady*. As the Sixth Circuit stated in *Presser*, "the government has represented that it will comply with all of its *Brady* obligations in time for effective use of the *Brady* material at trial. The *Brady* doctrine did not create a constitutional right of pre-trial discovery in a criminal proceeding." *Presser,* 844 F.2d at 1284 (citing *Weatherford v. Bursey,* 429 U.S. at 559). Rather, "in most criminal prosecutions, the *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled." *Id.* at 1285 n.12. Defendant has not established that any of these rules require disclosure of the requested material *at this time.* Accordingly, Defendant's motion will be denied.[3]

## V. Conclusion

IT IS ORDERED that the Defendant's motion to dismiss the indictment [Dkt. # 24], motion to strike surplusage [Dkt. # 23], motion for discovery and disclosure of exculpatory evidence [Dkt. # 25] and motion for order for return of patient charts [Dkt. # 22] are each DENIED.

          S/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: March 16, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 16, 2006, by electronic and/or ordinary mail.

          S/Lisa G. Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522

---

[3]The court also rejects Defendant's request for a witness list from the government. "[D]efense counsel [i]s not entitled to know, in advance of trial, who [i]s going to testify for the government." *United States v. Dark,* 597 F.2d 1097, 1099 (6th Cir. 1979).